IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROD W. BECK, et. al., ) <br> ) <br>    Plaintiffs, ) <br> ) <br> -vs- ) <br> ) <br> BEN YSURSA, in his Official Capacity as ) <br> Secretary of State for the State of Idaho, ) <br> ) <br>    Defendant. ) <br> ) <br> ) | **CASE NO. CV 07-299-MHW** <br><br> **MEMORANDUM DECISION AND ORDER** |

      Seventy-one members of the Republican party filed suit against the Idaho Secretary of State seeking declaratory and injunctive relief from enforcement of Idaho's "open" primary law, Idaho Code § 34-104.  In addition to the demands made in their Complaint, they have filed a separate Motion for Preliminary and Permanent Injunction, (Docket No. 3), seeking the same relief.  Defendant filed a Motion to Dismiss for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1), arguing that the Idaho Republican Party ("Party"), a political organization created by virtue of Idaho Code § 34-501, is the real party in interest and that its individual members do not have standing to sue.  (Docket No. 5).  In response, Plaintiffs filed an Amended Complaint, (Docket No. 8), alleging that they have standing as members of the Party to bring a derivative suit under Fed. R. Civ. P. 23.1.

Memorandum Decision and Order - 1

Having reviewed all briefing submitted, as well as other pertinent documents in the Court's file, and having heard oral arguments, the Court finds that Defendant's Motion to Dismiss should be granted for the following reasons.

## I.
## Background

The state of Idaho currently has an "open" primary election system.  *See* Idaho Code § 34-102 and § 34-904.  An "open" primary election allows voters of any party affiliation to vote in the primary of any party, although the voter's choice is limited to that party's ballot for all offices.  *See California Democratic Party v. Jones*, 530 U.S. 567, 576 n.6 (2000) (defining an "open" primary).  This allows a person, whether Republican, Democrat, or Independent, to choose in which political party's primary to vote on the day of the election.

On June 2, 2007, the Idaho Republican Party State Central Committee adopted a resolution, referred to as "Article IX, Section 4,"[1] that allows "[o]nly persons who have registered as a Republican prior to the Primary Election . . . to vote on an Idaho Republican Party ballot in that Primary Election."  Am. Compl. at 4, Docket No. 8; Aff. of Beck, Ex. A at 21, Docket No. 3.  Plaintiffs' complaint alleges that Idaho's "open" primary election law violates their First and Fourteenth Amendment rights to free association for the purpose of selecting Republican Party candidates in Idaho's primary elections because Idaho's statute now conflicts with the Closed Party Primary Rule adopted by the Idaho Republican Party.[2]  Plaintiffs also raise

---

[1] Plaintiffs have also referred to this section as the "Closed Republican Party Primary Rule."  Aff. of Beck, ¶ 4, Docket No. 3.

[2] In their submissions, Plaintiffs include an opinion letter from the Office of the Attorney General written to Idaho Representative Mike Moyle concluding that if the Republican Party adopts a closed primary rule, Idaho's "open" primary law would likely be declared an unconstitutional infringement upon the Party and its members' First

a claim under Section 2 of the Voting Rights Act, 42 U.S.C. § 1973 and § 1973c, as well as a claim under 42 U.S.C. § 1983.

Plaintiffs are seventy-one individual members of the Idaho Republican Party. Some of them are registered voters, while others are also members or officers of the Idaho Republican Party. Am. Compl. at 11–21, Docket No. 8. They seek declaratory and injunctive relief preventing enforcement of Idaho's open primary law prior to the May 2008 primary elections. They also demand enforcement of new procedures to implement the Closed Republican Party Primary Rule prior to the election. Compl. at 28–29, Docket No. 1. Finally, they seek to maintain a derivative action under Fed. R. Civ. P. 23.1 on behalf of the Idaho Republican Party. Rather than await a trial on the merits, Plaintiffs filed a motion seeking the same relief in conjunction with their Complaint. Docket No. 3.

At issue is whether or not Plaintiffs have standing to bring this action. Plaintiffs' Amended Complaint (Docket No. 8) alleges standing in the alternative, both as individual voters and as a derivative action under Fed. R. Civ. P. 23.1 to enforce the right of the Idaho Republican Party to implement its Closed Party Primary Rule. Am. Compl. at 3, Docket No. 8. Plaintiffs argue they meet the requirements of Rule 23.1 because they demanded that the Party join in their litigation efforts to immediately create a closed party primary system for the state of Idaho. They contend that Plaintiffs adequately represent the interests of the Party because the Closed Party Primary Rule is a directive of the Party, and as registered Republican voters, they will be injured if the rule is not implemented before the 2008 primary elections. Mem. at 6, Docket No.

---

Amendment right to free association. Aff. of Beck, Ex. D, Docket No. 3.

10.  Plaintiffs claim they will suffer individual harm in the form of the dilution of Republican party votes and the invalidation of the primary elections.  Mem. at 7, Docket No. 10.

Defendant's motion to dismiss (Docket No. 5) filed on August 2, 2007, argues that Plaintiffs lack standing and the complaint should be dismissed under Fed. R. Civ. P. 12(b)(1) for several reasons.  First, Defendant argues that the Republican Party is the real party in interest with standing to sue, relying upon *Osburn v. Cox*, 369 F.3d 1283 (11th Cir. 2004).  Mem. at 10–11, Docket No. 5.  Second, Defendant contends that Plaintiffs may not maintain an action under Fed. R. Civ. P. 23.1 because they have not received authority to sue upon behalf of the Republican Party or the State Central Committee and did not make proper demand upon the Party to bring suit.  Defendant also argues that there is no evidence that the Party is refusing to enforce its right to implement the Closed Party Primary Rule or is failing to exercise sound business judgment in deciding to pursue a legislative remedy rather than achieve its goal through litigation.  Reply at 4–5, Docket No. 11; Mem. at 12, Docket No. 5.  *See also* Aff. of Sullivan, Docket No. 5.[3]  Finally, Defendant argues that Plaintiffs do not represent the interests of the Party because there is no evidence that other similarly situated party members favor judicial rather than legislative action.  Reply at 8–9, Docket No. 11.  Without standing, Defendant argues that Plaintiffs' amended complaint must be dismissed and injunctive relief denied.  Mem. at 15–19, Docket No. 5.

---

[3]  Plaintiffs do not dispute that the Idaho Republican Party Executive Committee passed a resolution on August 9, 2007, that it would utilize the legislative process to implement the Closed Party Primary Rule.  Am. Compl., Ex. A, Docket No. 8.

## II.
## Discussion

**A.     Standards for a Motion to Dismiss.**

Fed. R. Civ. P. 12(b)(1) allows a defendant to assert by motion the defense of lack of jurisdiction over the subject matter.  A defense asserting lack of standing is properly raised in a motion to dismiss under Fed. R. Civ. P. 12(b)(1).  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  The party attacking the substance of the complaint may rely upon affidavits or other evidence properly before the Court.  *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989).  If affidavits are introduced, the party opposing the motion must present affidavits or other evidence necessary to satisfy its burden of establishing that the Court does have jurisdiction.  *St. Clair*, 880 F.2d at 201.  A court may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment, and it also need not presume the truthfulness of Plaintiffs' allegations.  *White v. Lee*, 227 F.3d at 1242.[4]

**B.     Plaintiffs May Not Maintain a Derivative Action Under Rule 23.1.**

   **1.  Applicability of Rule 23.1.**

The first section of Rule 23.1 states that "one or more shareholders or members may enforce a right of a corporation or of an unincorporated association" if the corporation or association has failed to enforce a right that may properly be asserted by it.  Idaho statutorily allows for the creation of political parties.  Idaho Code § 34-501.  Idaho recognizes the Idaho Republican Party, which is governed by the Republican State Central Committee.  Idaho Code §

---

[4] Neither Plaintiffs or Defendant have submitted that any of the documentary evidence attached to affidavits or Plaintiffs' Complaint and Amended Complaint should be excluded from review by the Court.

Memorandum Decision and Order - 5

34-504 (defining the membership of the state central committee of a political party); Aff. of Beck, Ex. A, Rules of the Idaho Republican Party, Docket No. 3.  The Idaho Republican Party is an unincorporated political association created by statute with the ability to sue in its own name, and the Idaho Republican Party State Central Committee is the governing body representing the members.  *See e.g.*, *California Democratic Party v. Jones*, 430 U.S. 567 (2000) (party as plaintiff).  Plaintiffs who are members of the Idaho Republican Party may therefore invoke Rule 23.1.

### 2. Plaintiffs Did Not Make Sufficient Demand.

Rule 23.1 requires that the complaint "allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort."  The analysis looks to "the sufficiency of the content of the demand and the sufficiency of the authority of those to whom the demand is presented."  *Greenspun v. Del E. Webb Corp.*, 634 F.2d 1204, 1209 (9th Cir. 1980).  Both the content of the demand and the authority to represent the governing body of the entity must be sufficient.  *Greenspun*, 634 F.2d at 1209.  If either of those elements is lacking, the Court must inquire whether a demand sufficient in content and presented to sufficient authority would have been futile.  *Id.*  If the demand is presented to the wrong audience, such as an individual without decision making authority, the rule will not have been met.  *Id.* (holding that the demand given to the president and general counsel of the corporation was insufficient because they were not an authority comparable to the board of directors).

In this case, Plaintiffs did not make sufficient demand to the correct people with the required content. Plaintiffs allege in their Amended Complaint that Plaintiff Rod Beck "had discussions" with members of the State Central Committee to discuss implementation of the Closed Party Primary Rule and met with J. Kirk Sullivan, the Chairman of the Idaho Republican Party. Am. Compl., ¶ 4, Docket No. 8. Plaintiffs do not describe the substance of those "discussions" in any particular detail. Rather, Plaintiff Rod Beck implies only that he asked members about the initiation of a lawsuit to implement the rule and invited Mr. Sullivan to join in a lawsuit, but that both Mr. Sullivan and the members he spoke to expressed opposition to a lawsuit. Am. Compl., ¶ 4, Docket No. 8.

Discussions with party members and the Chairman of the Party are not equivalent to a formal demand upon the Republican State Central Committee, the governing body authorized to act on behalf of the Idaho Republican Party. Aff. of Beck, Ex. A at 12, Rules of the Republican Party Art. I, § 1, Docket No. 3; Aff. of Sullivan, Ex. A, Docket No. 5. The Party's governing bodies deny that any discussion occurred or that a demand was presented to them for a decision concerning the lawsuit. Am. Compl., Ex. A, Mem. from Sullivan ("Since the subject [of the lawsuit] had not been discussed by either of the party's governing bodies . . ."), Docket No. 8. A vague "discussion" about a lawsuit with random party members and an invitation to the party chairman to join in a lawsuit already underway is not equivalent to the formal demand required by Rule 23.1, which would mandate a formal demand to the governing committee of the party. The Court finds no such demand was made.

Plaintiffs may be excused from the demand requirement if they can establish that a proper demand would have been futile. However, Plaintiffs neither allege nor argue futility.

Memorandum Decision and Order - 7

Instead, Plaintiffs simply point out that the members of the Party "generally opposed" the institution of a lawsuit to implement the rule, and that Chairman Sullivan refused to join in the lawsuit. Mem. at 5–6, Docket No. 10. Plaintiffs do not point to any conduct by the committee members to suggest that they were engaged in wrongful acts to render a proper demand futile. Mere refusal to implement or join in the lawsuit, without any evidence of self-interest, bias, or a violation in the exercise of their official duties, does not excuse demand and requires dismissal of Plaintiffs' suit under Rule 23.1. *See Greenspun*, 634 F.2d at 1210 (requiring a showing that the directors' conduct in approving a course of action must be wrongful and indicate self-interest or bias); *Corbus v. Alaska Treadwell Gold Mining Co.*, 187 U.S. 455, 463 (1903) (holding that if a demand is not made, the plaintiff must show it could not be done or that it was not reasonable to require it).

The futility requirement also compels consideration of the "business judgment rule" generally applicable to corporations and considered in the context of a derivative suit. This requirement "affords the directors an opportunity to exercise their reasonable business judgment and 'waive a legal right vested in the corporation in the belief that its best interests will be promoted by not insisting on such a right.'" *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 533 (1984) (quoting *Corbus v. Alaska Treadwell Gold Mining Co.*, 187 U.S. 455, 463 (1903)). The directors' judgment "as to any matter lawfully confided to their discretion may not lightly be challenged by any stockholder or at his instance submitted for review to a court of equity. . . And a court of equity may not be called upon at the appeal of any single stockholder to compel the directors or the corporation to enforce every right which it may possess, irrespective of other considerations." *Corbus*, 187 U.S. at 463.

Even if Plaintiffs could meet the demand requirement, Plaintiffs have not established that the Committee's failure to institute a lawsuit to implement the Closed Party Primary Rule was the product of other than sound business judgment.  It appears that the Committee and the Party itself are both aware that Idaho Code § 34-904 and other statutes may require legislative changes to comply with the Closed Party Republican Primary Rule.  *See* Aff. of Beck, Ex. D (letter to Representative Moyle expressing the Attorney General's opinion that Idaho's open primary statute may be unconstitutional if the Republican Party adopts a closed party primary rule), Docket No. 3.  Armed with that knowledge, the Idaho Republican Party Executive Committee passed a resolution on August 9, 2007, stating that the Republican Party disfavors "judicial activism" and memorializing its decision to utilize the legislative process to enact statutory changes to implement the Closed Party Primary Rule.  Am. Compl., Ex. A, Resolution of the Idaho Republican Party Exec. Comm., Docket No. 8.  In a prior resolution passed on June 16, 2006, the Republican Party adopted the strategy to "petition the governor of the State of Idaho and members of the Idaho Legislature to repeal laws that regulate political parties . . ."  Aff. of Beck, Ex. B, June 16, 2006 Resolution and Platform Position, Docket No. 3.  In the absence of any facts that the governing body of the Idaho Republican Party acted in a manner inconsistent with sound business judgment in adopting its resolution to seek a legislative solution rather than a judicial one, the Court presumes that the Committee acted in good faith on behalf of the Party.[5]

Plaintiffs, for the reasons discussed, have not met the requirements of Fed. R. Civ. P.

---

[5] One final requirement is also lacking.  Plaintiffs cannot be said to "fairly and adequately represent the interests of the . . . members similarly situated in enforcing the right of the [Idaho Republican Party]."  Fed. R. Civ. P. 23.1.  The June 16, 2006 Resolution indicates that the Resolution and Platform was "adopted by voice vote with no dissension evident."  Aff. of Beck, Ex. B, Docket No. 3.  It is apparent that the general membership, aside from Plaintiffs in this case, supports legislative action instead of judicial intervention and that Plaintiffs do not fairly represent other members concerning the manner in which the rule is implemented.

23.1, and lack the ability to maintain their suit as a derivative action. Therefore, Plaintiffs may only proceed if they have standing individually to pursue their claims.

**C.     Plaintiffs Lack Standing as Individuals to Pursue their Claim.**

    **1.     Plaintiffs' Claims.**

Plaintiffs set forth three separate causes of action in their Amended Complaint.[6] They allege that they are bringing this action under the "First and Fourteenth Amendments to the United States Constitution, Section 2 of the Voting Rights Act of 1965, 42 U.S.C. § 1973 and 1973c, and 42 U.S.C. § 1983 for declaratory and injunctive relief." Am. Compl. at 3, Docket No. 8. They do not, however, assert separate causes of action under any of their alternative theories. Instead, Plaintiffs allege that the Fourteenth Amendment makes the First Amendment applicable to the individual states, without asserting a separate cause of action under the Fourteenth Amendment. Am. Compl. at 9, Docket No. 8. Nor do Plaintiffs allege any facts in support of a separate claim under 42 U.S.C. § 1973, which prohibits the denial or abridgement of the right to vote on account of race or color, or any facts in support of an independent claim under 42 U.S.C. § 1973c, which prohibits enactment of voting qualifications based upon race or color.

Rather, Plaintiffs' lawsuit claims that Idaho's open primary law violates their First Amendment Right to association and infringes upon their right to vote in Republican Party primary elections conducted in accordance with the Idaho State Republican Party directives. Am. Compl. at 9, Docket No. 8. Plaintiffs assert two alternate claims for relief, one for

---

[6] The causes of action in the Amended Complaint are the same ones asserted in Plaintiff's Complaint, Docket No. 1, with the exception of their alternate theory of maintaining the action as a derivative suit. Defendant maintains that Plaintiffs lack standing to bring any of the claims asserted in this action. Mem. at 1, Docket No. 5.

Memorandum Decision and Order - 10

declaratory judgment declaring that Idaho's open primary election law abridges their First Amendment right to freedom of association and a second claim alternatively seeking an injunction enjoining the statute's future enforcement.  Am. Compl., Counts I and II at 26–30, Docket No. 8.  The Court therefore finds that Plaintiffs have only stated a claim for relief under their First Amendment theory.

### 2. Plaintiffs Lack Standing.

Absent the ability to maintain a derivative lawsuit under Fed. R. Civ. P. 23.1, Plaintiffs must have standing as individuals to sue Defendant for abridgement of their First Amendment right to free association.  The party invoking federal jurisdiction bears the burden of proving the three elements of standing.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  Those three elements are proof of an injury in fact that is concrete and particularized, as well as actual or imminent; a causal connection between the injury and the conduct complained of, which injury must be traceable to the defendant's action and not the independent action of a third party not before the court; and it must be likely, as opposed to speculative, that the injury will be addressed by a favorable decision.  *Lujan*, 504 U.S. at 560–61.

Closely related to the case or controversy requirement are other limitations on the concept of standing.  Even if the plaintiff has alleged an injury sufficient to meet the standards of constitutional standing under *Lujan*, the plaintiff must generally "assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975).  *See also Dunmore v. United States*, 358 F.3d 1107, 1112 (9th Cir. 2004) (dismissing a party's case when another party was the real party in interest);

Fed. R. Civ. P. 17(a) ("[e]very action shall be prosecuted in the name of the real party in interest.").

In *California Democratic Party v. Jones*, 530 U.S. 567, 577 (2000), the Supreme Court held that California's "blanket" primary system violated the Democratic Party's First Amendment right of association.  The Democratic Party, as well as three other political party plaintiffs in that case, had each adopted a rule prohibiting persons who are not members of the party from voting in the party's primary election.  California voters, however, passed Proposition 198, changing California's primary election law from a "closed" primary in which only persons who are members of the political party could vote on that party's nominee, to a "blanket" primary system entitling any person to vote for any candidate regardless of the candidate's political affiliation.[7]  The California Democratic Party along with three other political parties challenged Proposition 198, and the Court held that it impermissibly infringed upon the parties' associational rights by opening up the candidate selection process, "the basic function of a political party," to persons unaffiliated with the party.  *California Democratic Party*, 530 U.S. at 581.

The Supreme Court did not decide the issue before the Court today, which is whether individual members possess standing to challenge a state's election laws when those laws conflict with the rules of the political party to which they belong.  However, by implication, the holding in *California Democratic Party* supports the proposition that the ability to challenge

---

[7] Although similar, a "blanket" primary is different from an "open" primary.  In a blanket primary, voters can participate in the primaries of more than one party on a single occasion, and may select the primary they want to vote in with respect to each elective office.  *California Democratic Party*, 530 U.S. at 577 n.8.  In an open primary, voters may vote for any party's nominee, but that voter is limited to that party's nominees for all elective offices. *California Democratic Party*, 530 U.S. at 576 n.6.

election laws in conflict with the associational rules of a political party is limited to the party itself.  In *California Democratic Party*, individual voters changed California's primary election laws by voting in favor of Proposition 198.  Proposition 198 directly conflicted with the primary election rules of the four political parties recognized by the state of California.  Despite the overwhelming popular vote endorsing Proposition 198 and therefore changing California's primary election from a closed to a blanket primary, the rules of the four political party plaintiffs prohibiting blanket primaries were found to override its individual members' interests.  It stands to reason therefore that if individual party members and voters can not pass laws abridging a political party's associational rules, then they can not litigate in their individual capacities to change a state's primary voting laws in conflict with those rules.  Although *California Democratic Party* did not decide the precise issue before the Court, it is clear that it and other cases determine that the right to define associational membership is a right possessed by the political party and not its members.

      Two decisions subsequent to *California Democratic Party* have decided the precise issue before the Court and have held that individual party members lack standing to challenge a state's regulation of a political party's primary.  These decisions are persuasive here.  In *Osborn v. Cox*, 369 F.3d 1283 (11th Cir. 2004), five registered voters challenged Georgia's open primary election law asserting a claim under the First Amendment.  On appeal, the court affirmed the decision that standing to challenge a state's regulation of a political party's primary belongs only to the party itself, and upheld the dismissal of the plaintiffs' complaint for lack of standing.  *Osborn*, 369 F.3d at 1287–88.  The court noted that in all similar cases, the Supreme Court has upheld a political party's right to decide who would be involved in the decision making process,

Memorandum Decision and Order - 13

and denied the ability of individual members of the political party to define those rights. *Osborn*, 369 F.3d at 1287.

Similarly, in an unpublished decision, *Righeimer v. Jones*, No. CIV. S-00-1522, 2000 WL 1346808 at *2 (E.D. Cal. Sept. 14, 2000), the court relied upon *California Democratic Party* and held that an individual party nominee challenging the election results of California's blanket primary did not have standing. The court explained that the First Amendment associational rights at issue "belong solely to the association, . . . the Republican Party, not to any individual candidate or voter." *Righeimer*, 2000 WL 1346808 at *1. The court also noted that even if the state's election laws violated the associational rules of the party, the party had the ability to define its own remedy. *Righeimer* at *1. For example, if the party had adopted a closed party primary rule while the state permitted a blanket primary, the party could voluntarily choose to participate in the blanket primary and adopt the results, or adopt rules deciding who the party's nominees were following a blanket primary by counting only the votes of registered party members.

The Court therefore finds that Plaintiffs lack standing to challenge Idaho's open primary election laws, as only the Idaho Republican Party possesses that right. Plaintiffs may not assert the associational rights of the political party to which they belong. Plaintiffs contend that if the Court does not enjoin Defendant, harm in the form of a diluted primary will occur. But the harm Plaintiffs complain of may not occur. The Idaho Republican Party may decide, as in *Righeimer*, to adopt rules implementing its closed primary rule in spite of Idaho's open primary election laws. *See Righeimer* at *2 (noting that the California Republican Party Bylaws decided who the party's true nominees were following a blanket primary). It is for the Idaho Republican Party,

Memorandum Decision and Order - 14

and not the Court, to decide how best to govern the associational rights of its members, and Plaintiffs lack the ability to substitute their judgment for that of the Party.

Plaintiffs suggested at oral argument that the Court stay the action until it can be determined if the Idaho legislature will act to implement the Closed Party Primary Rule. However, absent standing, the Court has no jurisdiction, and can not enter an order staying the proceedings. The Court will therefore grant Defendant's motion to dismiss Plaintiffs' Amended Complaint.

## ORDER

Based on the foregoing, the Court being otherwise fully advised in the premises, **IT IS HEREBY ORDERED that:**

1) Defendant's Motion to Dismiss, (Docket No. 5), is GRANTED and the action is dismissed in its entirety without prejudice.

2) Plaintiffs' Motion for Preliminary and Permanent Injunction, (Docket No. 3), is therefore MOOT.

DATED: November 27, 2007

Honorable Mikel H. Williams
Chief United States Magistrate Judge